IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ALEXSAM, INC., a Texas corporation, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | The Honorable _____ |
| | ) | |
| v. | ) | Magistrate Judge _____ |
| | ) | |
| BEST BUY CO., INC., a Minnesota corporation, | ) | **COMPLAINT** |
| BEST BUY STORES LP, a Virginia limited | ) | |
| partnership, BARNES & NOBLE, INC., a | ) | **JURY TRIAL DEMANDED** |
| Delaware corporation, BARNES & NOBLE | ) | |
| MARKETING SERVICES CORP., a Florida | ) | |
| corporation, THE GAP, INC., a Delaware | ) | |
| corporation, DIRECT CONSUMER SERVICES, | ) | |
| LLC, a California limited liability company, | ) | |
| THE HOME DEPOT, INC., a Delaware | ) | |
| corporation, HOME DEPOT INCENTIVES, INC., a | ) | |
| Virginia corporation, MCDONALD'S | ) | |
| CORPORATION, a Delaware corporation, P2W, | ) | |
| INC. NFP, an Illinois corporation, TOYS "R" | ) | |
| US, INC., a Delaware corporation, and TRU- | ) | |
| SVC, LLC, a Virginia limited liability | ) | |
| company, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Alexsam, Inc. ("Alexsam"), complains against Defendants Best Buy Co., Inc.

("Best Buy"), Best Buy Stores, L.P. ("Best Buy Stores"), Barnes & Noble, Inc. ("B&N"), Barnes &

Noble Marketing Services Corp. ("B&N Marketing Services"), The Gap, Inc. ("Gap"), Direct

Consumer Services, LLC ("Direct Consumer Services"), The Home Depot, Inc. ("The Home

Depot"), Home Depot Incentives, Inc. ("Home Depot Incentives"), McDonald's Corporation

("McDonald's"), P2W, Inc. NFP ("P2W"), Toys "R" Us, Inc. ("TRU") and TRU-SVC, LLC ("TRU-

SVC") (collectively, "Defendants"), as follows:

## NATURE OF ACTION

This is an action for patent infringement pursuant to 35 U.S.C. § 271.  Alexsam's patented technology relates to stored value card programs, such as electronic gift card programs, and provides systems and methods for performing card activation, recharge and other card authorization transactions using retail point-of-sale devices, intermediate networks and processors, and card processing hub platforms.  The patented technology enables stored value card system operators to provide stored value cards for sale and to enable card authorization transactions to be performed at selected retail locations.  The Defendants each manage and control stored value card programs in which stored value cards are sold to consumers at various retail locations and card activation and/or recharge transactions are initiated by retail point-of-sale devices using systems and methods which infringe the patented technology.

## THE PARTIES

1.      Alexsam is a corporation organized and existing under the laws of the State of Texas.  Alexsam is in the business of licensing its patented technology, has pursued numerous patent infringement actions against various other parties in this District, and is presently a party to pending patent infringement actions venued in this District.

2.      Best Buy is a corporation incorporated under the laws of the State of Minnesota with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423.  Best Buy, by itself, and through one or more other entities owned, controlled or otherwise affiliated with Best Buy, conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, promoting, offering to sell and selling products and services to consumers in this District through the interactive website http://www.bestbuy.com/ and through its own retail stores located in this District.  The business activities of Best Buy also include

2

promoting, offering to sell and selling branded stored value cards through its interactive website, at its own retail stores and at third-party retail stores located in this District, and enabling consumers to use such cards to make purchases at its retail stores located in this District. Best Buy is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process.

3.      Best Buy Stores is a limited partnership organized under the laws of the State of Virginia with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Upon information and belief, Best Buy Stores is a wholly-owned subsidiary of defendant Best Buy. Defendant Best Buy Stores conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including without limitation, in conjunction with defendant Best Buy, promoting, offering to sell and selling branded stored value cards through the http://www.bestbuy.com/ website and at retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at retail stores located in this District. Best Buy Stores has a registered agent in Texas for purposes of service of process.

4.      Upon information and belief, Best Buy and its subsidiary Best Buy Stores are alter egos of one another and are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

5.      B&N is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 122 Fifth Avenue, New York, New York 10011. B&N, by itself, and/or through one or more entities owned, controlled or otherwise affiliated with B&N, conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, promoting, offering to sell and selling products and services to

consumers in this District through the interactive website http://www.barnesandnoble.com/ and through its own retail stores located in this District.  The business activities of B&N also include promoting, offering to sell and selling branded stored value cards through its interactive website, at its own retail stores and at third-party retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at retail stores located in this District.  B&N is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process.

6.     B&N Marketing Services is a corporation incorporated under the laws of the State of Florida with its principal place of business at 122 Fifth Avenue, New York, New York 10011.  Upon information and belief, B&N Marketing Services is a wholly-owned subsidiary of defendant B&N. Defendant B&N Marketing Services conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including without limitation, in conjunction with defendant B&N, promoting, offering to sell and selling branded stored value cards through the http://www.barnesandnoble.com/ website and at retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at retail stores located in this District.

7.     Upon information and belief, B&N and its subsidiary B&N Marketing Services are alter egos of one another and are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

8.     Gap is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2 Folsom Street, San Francisco, California 94105.  Gap, by itself, and/or through one or more entities owned, controlled or otherwise affiliated with Gap, conducts business in and is doing business in Texas and in this District and elsewhere in the United States,

including, without limitation, promoting, offering to sell and selling products to consumers in this District through the interactive website http://www.gap.com/ and through its retail stores, such as Gap, Old Navy, and Banana Republic stores, located in this District. The business activities of Gap also include promoting, offering to sell and selling branded stored value cards to consumers in this District through its interactive website and at its own retail stores and at third-party retail stores located in this District, and enabling consumers to use such cards to make purchases at its own retail stores in this District. Gap is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process.

9.      Direct Consumer Services is a limited liability company organized under the laws of the State of California with its principal place of business at 2 Folsom Street, San Francisco, California 94105. Upon information and belief, Direct Consumer Services is a wholly-owned subsidiary of defendant Gap. Defendant Direct Consumer Services conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including without limitation, in conjunction with defendant Gap, promoting, offering to sell and selling branded stored value cards through the http://www.gap.com/ website and at retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at retail stores located in this District.

10.      Upon information and belief, Gap and its subsidiary Direct Consumer Services are alter egos of one another and are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

11.      The Home Depot is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 2455 Paces Ferry Road, N.W., Atlanta, Georgia 30339. The Home Depot, by itself, and/or through one or more entities owned, controlled or

otherwise affiliated with The Home Depot, conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, promoting, offering to sell and selling products and services to consumers in this District through the interactive website http://www.homedepot.com/ and through retail stores located in this District. The business activities of The Home Depot also include promoting, offering to sell and selling branded stored value cards through its interactive website, at its own retail stores and at third-party retail stores located in this District, and enabling consumers to use such cards to make purchases at Home Depot stores located in this District. The Home Depot has a designated registered agent in Texas for purposes of service of process.

12.     Home Depot Incentives is a corporation incorporated under the laws of the State of Virginia with its principal place of business at 2455 Paces Ferry Road, N.W., Atlanta, Georgia 30339. Upon information and belief, Home Depot Incentives is a wholly-owned subsidiary of defendant The Home Depot. Defendant Home Depot Incentives conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including without limitation, in conjunction with defendant The Home Depot, promoting, offering to sell and selling branded stored value cards through the website http://www.homedepot.com/ and at retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at Home Depot stores located in this District.

13.     Upon information and belief, The Home Depot and its subsidiary Home Depot Incentives are alter egos of one another and are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

14.     McDonald's is a corporation incorporated under the laws of the State of Delaware with its principal place of business at One McDonald's Plaza, Oak Brook, Illinois 60523. McDonald's, by itself, and/or through one or more franchisees or other entities owned, controlled or otherwise affiliated with McDonald's, conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, owning, developing, operating and franchising McDonald's restaurants located in this District and promoting, offering to sell and selling products and services associated with such restaurants in this District.  The business activities of  McDonald's also include promoting, offering to sell and selling branded stored value cards to consumers in this District through the interactive website http://www.mcdonalds.com/ and at McDonald's restaurants and at third-party retail stores located in this District, and enabling consumers to use such cards to make purchases at McDonald's restaurants in this District. McDonald's is registered to do business in Texas and has a designated registered agent in Texas for purposes of service of process.

15.     P2W is a corporation incorporated under the laws of the State of Illinois with its principal place of business at One McDonald's Plaza, Oak Brook, Illinois 60523.  Upon information and belief, P2W is a wholly-owned subsidiary of defendant McDonald's.  P2W conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including without limitation, in conjunction with defendant McDonald's, promoting, offering to sell and selling branded stored value cards to consumers in this District through the interactive website http://www.mcdonalds.com/ and at McDonald's restaurants and at third-party retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at McDonald's restaurants located in this District.

16.     Upon information and belief, McDonald's and its subsidiary P2W are alter egos of one another and are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

17.     TRU is a corporation incorporated under the laws of the State of Delaware with its principal place of business at One Geoffrey Way, Wayne, New Jersey 07470.  TRU, by itself, and/or through one or more entities owned, controlled or otherwise affiliated with TRU, conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, promoting, offering to sell and selling products and services to consumers in this District through the interactive website http://www.toysrus.com/ through retail stores located in this District.  The business activities of TRU also include promoting, offering to sell and selling branded stored value cards through its interactive website, at its own retail stores and at third-party retail stores located in this District, and enabling consumers to use such cards to make purchases at TRU stores located in this District.

18.     TRU-SVC is a limited liability company organized under the laws of the State of Virginia with its principal place of business at One Geoffrey Way, Wayne, New Jersey 07470. Upon information and belief, TRU-SVC is a wholly-owned subsidiary of defendant TRU. Defendant TRU-SVC conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including without limitation, in conjunction with defendant TRU, promoting, offering to sell and selling branded stored value cards through the website http://www.toysrus.com/ and at retail stores located in this District, managing stored value card programs with respect to consumers in this District and enabling consumers to use such cards to make purchases at TRU stores located in this District.

19.     Upon information and belief, TRU and its subsidiary TRU-SVC are alter egos of one another and are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

## JURISDICTION AND VENUE

20.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business conducted in this forum, including having (i) solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and is actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District, induced others to commit acts of infringement within this District, and/or contributed to infringing activities within this District.

22.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because each Defendant is subject to personal jurisdiction in this District, resides in, has regularly conducted business in this District and/or has committed acts of patent infringement in this District.

## FIRST CAUSE OF ACTION – INFRINGEMENT OF '608 PATENT

23.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 22, as if fully set forth herein.

24.     On December 14, 1999, U.S. Patent No. 6,000,608 ("the '608 patent"), entitled "Multifunction Card System," a copy of which is attached hereto as Exhibit A, was duly and legally issued to the inventor, Robert E. Dorf.  Mr. Dorf has assigned all right, title and interest in the '608 patent to Alexsam, including the right to sue for and recover all past, present and future damages for infringement of the '608 patent.

25.     Best Buy and Best Buy Stores, and each of them, jointly and severally ("Best Buy Defendants"), and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '608 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '608 patent within the United States and within this District. The Best Buy Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a bank identification number ("BIN") that can be redeemed at one or more of Best Buy and/or Napster (online) stores ("Best Buy Cards").

26.     The Best Buy Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate Best Buy Card activation and/or recharge transactions that use point-of-sale devices on behalf of the Best Buy Defendants; (ii) supplying, offering for sale and selling Best Buy Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon Best Buy customers by which the Best Buy Defendants retain ownership of funds received from

purchases of Best Buy Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which Best Buy Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Best Buy Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Best Buy Cards.

27.      The Best Buy Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '608 patent.  The Best Buy Defendants are further liable for direct infringement of systems and methods covered by the '608 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the Best Buy Defendants, such that the Best Buy Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the Best Buy Defendants.

28.     Plaintiff pleads in the alternative that the Best Buy Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell Best Buy Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '608 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '608 patent, knowing that such cards are especially made or especially adapted for use in infringing the '608 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

29.     Plaintiff further pleads in the alternative that the Best Buy Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling Best Buy Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon Best Buy customers by which the Best Buy Defendants retain ownership of funds received from purchases of Best Buy Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the Best Buy Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing

platform on behalf of the Best Buy Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Best Buy Cards; (vi) advertising and promoting such Best Buy Card programs; and/or (vii) enabling Best Buy customers to make purchases using such cards at retail stores owned or controlled by the Best Buy Defendants; all with specific intent to cause and/or encourage such direct infringement of the '608 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '608 patent.

30.    At least Defendant Best Buy was provided written notice of the '608 patent but the Best Buy Defendants have continued their infringement notwithstanding such notice.

31.    The Best Buy Defendants' direct infringement, contributory infringement and/or inducement to infringe the '608 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

32.    Unless enjoined by the Court, the Best Buy Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '608 patent.

33.    B&N and B&N Marketing Services, and each of them, jointly and severally ("B&N Defendants"), and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '608 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization

transactions which are covered by the '608 patent within the United States and within this District. The B&N Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of B&N stores ("B&N Cards").

34.     The B&N Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate B&N Card activation and/or recharge transactions that use point-of-sale devices on behalf of the B&N Defendants; (ii) supplying, offering for sale and selling B&N Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon B&N customers by which the B&N Defendants retain ownership of funds received from purchases of B&N Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which B&N Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the B&N Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing

platform providing processing of card authorization transactions and management of accounts associated with such B&N Cards.

35.     The B&N Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '608 patent.  The B&N Defendants are further liable for direct infringement of systems and methods covered by the '608 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the B&N Defendants, such that the B&N Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the B&N Defendants.

36.     Plaintiff pleads in the alternative that the B&N Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell B&N Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '608 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '608 patent, knowing that such cards are especially made or especially adapted for use in infringing the '608 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

37.     Plaintiff further pleads in the alternative that the B&N Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced

and continue to induce the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling B&N Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon B&N customers by which the B&N Defendants retain ownership of funds received from purchases of B&N Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the B&N Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the B&N Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such B&N Cards; (vi) advertising and promoting such B&N Card programs; and/or (vii) enabling B&N customers to make purchases using such cards at retail stores owned or controlled by the B&N Defendants; all with specific intent to cause and/or encourage such direct infringement of the '608 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '608 patent.

38.     The B&N Defendants' direct infringement, contributory infringement and/or inducement to infringe the '608 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

39.     Unless enjoined by the Court, the B&N Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '608 patent.

40.     Gap and Direct Consumer Services, and each of them, jointly and severally ("Gap Defendants"), and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '608 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '608 patent within the United States and within this District. The Gap Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of its retail stores ("Gap Cards").

41.     The Gap Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate Gap Card activation and/or recharge transactions that use point-of-sale devices on behalf of the Gap Defendants; (ii) supplying, offering for sale and selling Gap Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon Gap customers by which the Gap Defendants retain ownership of funds received from purchases of Gap Cards, remain liable for the

balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which Gap Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Gap Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Gap Cards.

42.     The Gap Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '608 patent.  The Gap Defendants are further liable for direct infringement of systems and methods covered by the '608 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the Gap Defendants, such that the Gap Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the Gap Defendants.

43.     Plaintiff pleads in the alternative that the Gap Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and

continue to contribute to the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell Gap Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '608 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '608 patent, knowing that such cards are especially made or especially adapted for use in infringing the '608 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

44.     Plaintiff further pleads in the alternative that the Gap Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling Gap Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon Gap customers by which the Gap Defendants retain ownership of funds received from purchases of Gap Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the Gap Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Gap Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the

selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Gap Cards; (vi) advertising and promoting such Gap Card programs; and/or (vii) enabling Gap customers to make purchases using such cards at retail stores owned or controlled by the Gap Defendants; all with specific intent to cause and/or encourage such direct infringement of the '608 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '608 patent.

45.     The Gap Defendants' direct infringement, contributory infringement and/or inducement to infringe the '608 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

46.     Unless enjoined by the Court, the Gap Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '608 patent.

47.     The Home Depot and Home Depot Incentives, and each of them, jointly and severally ("Home Depot Defendants"), and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '608 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '608 patent within the United States and within this District.  The Home Depot Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of its retail stores ("Home Depot Cards").

48.     The Home Depot Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate Home Depot Card activation and/or recharge transactions that use point-of-sale devices on behalf of the Home Depot Defendants; (ii) supplying, offering for sale and selling Home Depot Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon Home Depot customers by which the Home Depot Defendants retain ownership of funds received from purchases of Home Depot Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which Home Depot Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Home Depot Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Home Depot Cards.

49.     The Home Depot Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems

covered by the '608 patent.  The Home Depot Defendants are further liable for direct infringement of systems and methods covered by the '608 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the Home Depot Defendants, such that the Home Depot Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the Home Depot Defendants.

50.     Plaintiff pleads in the alternative that the Home Depot Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell Home Depot Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '608 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '608 patent, knowing that such cards are especially made or especially adapted for use in infringing the '608 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

51.     Plaintiff further pleads in the alternative that the Home Depot Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling Home Depot Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and

must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon Home Depot customers by which the Home Depot Defendants retain ownership of funds received from purchases of Home Depot Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the Home Depot Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Home Depot Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Home Depot Cards; (vi) advertising and promoting such Home Depot Card programs; and/or (vii) enabling Home Depot customers to make purchases using such cards at retail stores owned or controlled by the Home Depot Defendants; all with specific intent to cause and/or encourage such direct infringement of the '608 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '608 patent.

52.     The Home Depot Defendants' direct infringement, contributory infringement and/or inducement to infringe the '608 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

53.     Unless enjoined by the Court, the Home Depot Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '608 patent.

54.     McDonald's and P2W, and each of them, jointly and severally ("McDonald's Defendants"), and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '608 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '608 patent within the United States and within this District. The McDonald's Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at McDonald's restaurants ("McDonald's Cards").

55.     The McDonald's Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate McDonald's Card activation and/or recharge transactions that use point-of-sale devices on behalf of the McDonald's Defendants; (ii) supplying, offering for sale and selling McDonald's Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon McDonald's customers by which the McDonald's Defendants retain ownership of funds received from purchases of McDonald's Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which McDonald's Cards must be activated and informing customers that such cards have no

value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the McDonald's Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such McDonald's Cards.

56.     The McDonald's Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '608 patent.  The McDonald's Defendants are further liable for direct infringement of systems and methods covered by the '608 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the McDonald's Defendants, such that the McDonald's Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the McDonald's Defendants.

57.     Plaintiff pleads in the alternative that the McDonald's Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '608 patent pursuant to 35

U.S.C. § 271(c) at least by providing, selling and/or offering to sell McDonald's Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '608 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '608 patent, knowing that such cards are especially made or especially adapted for use in infringing the '608 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

58.     Plaintiff further pleads in the alternative that the McDonald's Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling McDonald's Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon McDonald's customers by which the McDonald's Defendants retain ownership of funds received from purchases of McDonald's Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the McDonald's Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the McDonald's Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at

third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such McDonald's Cards; (vi) advertising and promoting such McDonald's Card programs; and/or (vii) enabling McDonald's customers to make purchases using such cards at retail stores owned or controlled by the McDonald's Defendants; all with specific intent to cause and/or encourage such direct infringement of the '608 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '608 patent.

59.     On information and belief, at least Defendant McDonald's was provided with notice of the '608 patent but the McDonald's Defendants have continued their infringement notwithstanding such notice.

60.     The McDonald's Defendants' direct infringement, contributory infringement and/or inducement to infringe the '608 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

61.     Unless enjoined by the Court, the McDonald's Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '608 patent.

62.     TRU and TRU-SVC, and each of them, jointly and severally ("TRU Defendants"), and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '608 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '608 patent within the United States and within this District. The TRU

Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of TRU stores ("TRU Cards").

63.     The TRU Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate TRU Card activation and/or recharge transactions that use point-of-sale devices on behalf of the TRU Defendants; (ii) supplying, offering for sale and selling TRU Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon TRU customers by which the TRU Defendants retain ownership of funds received from purchases of TRU Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which TRU Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the TRU Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such TRU Cards.

64.     The TRU Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '608 patent.  The TRU Defendants are further liable for direct infringement of systems and methods covered by the '608 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the TRU Defendants, such that the TRU Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the TRU Defendants.

65.     Plaintiff pleads in the alternative that the TRU Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell TRU Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '608 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '608 patent, knowing that such cards are especially made or especially adapted for use in infringing the '608 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

66.     Plaintiff further pleads in the alternative that the TRU Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '608 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling TRU Cards at such authorized

retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon TRU customers by which the TRU Defendants retain ownership of funds received from purchases of TRU Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the TRU Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the TRU Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such TRU Cards; (vi) advertising and promoting such TRU Card programs; and/or (vii) enabling TRU customers to make purchases using such cards at retail stores owned or controlled by the TRU Defendants; all with specific intent to cause and/or encourage such direct infringement of the '608 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '608 patent.

67.     At least Defendant TRU was provided written notice of the '608 patent but the TRU Defendants have continued their infringement notwithstanding such notice.

68.     The TRU Defendants' direct infringement, contributory infringement and/or inducement to infringe the '608 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

69.     Unless enjoined by the Court, the TRU Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '608 patent.

### SECOND CAUSE OF ACTION – INFRINGEMENT OF '787 PATENT

70.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 22, as if fully set forth herein.

71.     On February 20, 2001, U.S. Patent No. 6,189,787 ("the '787 patent"), entitled "Multifunctional Card System," a copy of which is attached hereto as Exhibit B, was duly and legally issued to the inventor, Robert E. Dorf.  Mr. Dorf has assigned all right, title and interest in the '787 patent to Alexsam, including the right to sue for and recover all past, present and future damages for infringement of the '787 patent.

72.     The Best Buy Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '787 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '787 patent within the United States and within this District.  The Best Buy Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of Best Buy and/or Napster (online) stores ("Best Buy Cards").

73.    The Best Buy Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate Best Buy Card activation and/or recharge transactions that use point-of-sale devices on behalf of the Best Buy Defendants; (ii) supplying, offering for sale and selling Best Buy Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon Best Buy customers by which the Best Buy Defendants retain ownership of funds received from purchases of Best Buy Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which Best Buy Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Best Buy Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Best Buy Cards.

74.    The Best Buy Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered

32

by the '787 patent.  The Best Buy Defendants are further liable for direct infringement of systems and methods covered by the '787 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the Best Buy Defendants, such that the Best Buy Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the Best Buy Defendants.

75.     Plaintiff pleads in the alternative that the Best Buy Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell Best Buy Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '787 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '787 patent, knowing that such cards are especially made or especially adapted for use in infringing the '787 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

76.     Plaintiff further pleads in the alternative that the Best Buy Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling Best Buy Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon Best Buy customers by which the Best Buy Defendants retain ownership of funds

received from purchases of Best Buy Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the Best Buy Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Best Buy Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Best Buy Cards; (vi) advertising and promoting such Best Buy Card programs; and/or (vii) enabling Best Buy customers to make purchases using such cards at retail stores owned or controlled by the Best Buy Defendants; all with specific intent to cause and/or encourage such direct infringement of the '787 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '787 patent.

77.     At least Defendant Best Buy was provided written notice of the '787 patent but the Best Buy Defendants have continued their infringement notwithstanding such notice.

78.     The Best Buy Defendants' direct infringement, contributory infringement and/or inducement to infringe the '787 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

79.     Unless enjoined by the Court, the Best Buy Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '787 patent.

80.     The B&N Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '787 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '787 patent within the United States and within this District.  The B&N Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of B&N stores ("B&N Cards").

81.     The B&N Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate B&N Card activation and/or recharge transactions that use point-of-sale devices on behalf of the B&N Defendants; (ii) supplying, offering for sale and selling B&N Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon B&N customers by which the B&N Defendants retain ownership of funds received from purchases of B&N Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which B&N Cards must be activated and informing customers that such cards  have no value unless activated at the checkout counter; (v)

35

directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the B&N Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such B&N Cards.

82.     The B&N Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '787 patent.  The B&N Defendants are further liable for direct infringement of systems and methods covered by the '787 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the B&N Defendants, such that the B&N Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the B&N Defendants.

83.     Plaintiff pleads in the alternative that the B&N Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell B&N Cards having a unique identification number

comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '787 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '787 patent, knowing that such cards are especially made or especially adapted for use in infringing the '787 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

84.     Plaintiff further pleads in the alternative that the B&N Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling B&N Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon B&N customers by which the B&N Defendants retain ownership of funds received from purchases of B&N Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the B&N Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the B&N Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of

accounts associated with such B&N Cards; (vi) advertising and promoting such B&N Card programs; and/or (vii) enabling B&N customers to make purchases using such cards at retail stores owned or controlled by the B&N Defendants; all with specific intent to cause and/or encourage such direct infringement of the '787 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '787 patent.

85.     The B&N Defendants' direct infringement, contributory infringement and/or inducement to infringe the '787 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

86.     Unless enjoined by the Court, the B&N Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '787 patent.

87.     The Gap Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '787 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '787 patent within the United States and within this District.  The Gap Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of its retail stores ("Gap Cards").

88.     The Gap Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate Gap Card activation and/or

recharge transactions that use point-of-sale devices on behalf of the Gap Defendants; (ii) supplying, offering for sale and selling Gap Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon Gap customers by which the Gap Defendants retain ownership of funds received from purchases of Gap Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which Gap Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Gap Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Gap Cards.

89.     The Gap Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '787 patent.  The Gap Defendants are further liable for direct infringement of systems and methods covered by the '787 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on

behalf of, according to the requirements of and subject to the control of the Gap Defendants, such that the Gap Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the Gap Defendants.

90.     Plaintiff pleads in the alternative that the Gap Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell Gap Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '787 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '787 patent, knowing that such cards are especially made or especially adapted for use in infringing the '787 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

91.     Plaintiff further pleads in the alternative that the Gap Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling Gap Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon Gap customers by which the Gap Defendants retain ownership of funds received from purchases of Gap Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the Gap Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing

services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Gap Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Gap Cards; (vi) advertising and promoting such Gap Card programs; and/or (vii) enabling Gap customers to make purchases using such cards at retail stores owned or controlled by the Gap Defendants; all with specific intent to cause and/or encourage such direct infringement of the '787 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '787 patent.

92.     The Gap Defendants' direct infringement, contributory infringement and/or inducement to infringe the '787 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

93.     Unless enjoined by the Court, the Gap Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '787 patent.

94.     The Home Depot Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '787 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '787

patent within the United States and within this District.  The Home Depot Defendants have been and

are engaged in direct infringing activities with regard to at least stored value cards having a unique

identification number comprising a BIN that can be redeemed at one or more of its retail stores

("Home Depot Cards").

95.     The Home Depot Defendants have made and used and continue to make and use

infringing card systems, and have practiced and continue to practice infringing methods by at least

one or more of: (i) choosing and authorizing selected retail locations to initiate Home Depot Card

activation and/or recharge transactions that use point-of-sale devices on behalf of the Home Depot

Defendants; (ii) supplying, offering for sale and selling Home Depot Cards at such authorized retail

locations, which cards have a unique identification number comprising a BIN and must be activated

and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon

Home Depot customers by which the Home Depot Defendants retain ownership of funds received

from purchases of Home Depot Cards, remain liable for the balance of the accounts associated with

such cards and the customers are directed how and where to redeem value; (iv) dictating the manner

by which Home Depot Cards must be activated and informing customers that such cards have no

value unless activated at the checkout counter; (v) directing via contract providers for distribution,

transaction processing services, connectivity and integration ("intermediate processors") which

enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations

and associated with corresponding card accounts hosted on a card processing platform on behalf of

the Home Depot Defendants; and/or (vi) directing via contract a card processing platform such that

card activation and/or recharge authorization transactions initiated at third-party retailer point-of-

sale devices are routed via the selected intermediate processors to and from the selected processing

platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Home Depot Cards.

96.     The Home Depot Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '787 patent.  The Home Depot Defendants are further liable for direct infringement of systems and methods covered by the '787 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the Home Depot Defendants, such that the Home Depot Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the Home Depot Defendants.

97.     Plaintiff pleads in the alternative that the Home Depot Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell Home Depot Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '787 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '787 patent, knowing that such cards are especially made or especially adapted for use in infringing the '787 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

43

98.     Plaintiff further pleads in the alternative that the Home Depot Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling Home Depot Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon Home Depot customers by which the Home Depot Defendants retain ownership of funds received from purchases of Home Depot Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the Home Depot Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the Home Depot Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such Home Depot Cards; (vi) advertising and promoting such Home Depot Card programs; and/or (vii) enabling Home Depot customers to make purchases using such cards at retail stores owned or controlled by the Home Depot Defendants; all with specific intent to cause and/or encourage such direct infringement of the

'787 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '787 patent.

99.     The Home Depot Defendants' direct infringement, contributory infringement and/or inducement to infringe the '787 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

100.    Unless enjoined by the Court, the Home Depot Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '787 patent.

101.    The McDonald's Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '787 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '787 patent within the United States and within this District. The McDonald's Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at McDonald's restaurants ("McDonald's Cards").

102.    The McDonald's Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate McDonald's Card activation and/or recharge transactions that use point-of-sale devices on behalf of the McDonald's Defendants; (ii) supplying, offering for sale and selling McDonald's Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated

45

and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon McDonald's customers by which the McDonald's Defendants retain ownership of funds received from purchases of McDonald's Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which McDonald's Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the McDonald's Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such McDonald's Cards.

103.    The McDonald's Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '787 patent.  The McDonald's Defendants are further liable for direct infringement of systems and methods covered by the '787 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the McDonald's Defendants, such that the McDonald's Defendants are jointly and severally and/or

vicariously liable for the components and acts provided by such third-parties on behalf of the McDonald's Defendants.

104.    Plaintiff pleads in the alternative that the McDonald's Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell McDonald's Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '787 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '787 patent, knowing that such cards are especially made or especially adapted for use in infringing the '787 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

105.    Plaintiff further pleads in the alternative that the McDonald's Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling McDonald's Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon McDonald's customers by which the McDonald's Defendants retain ownership of funds received from purchases of McDonald's Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the McDonald's Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract

providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the McDonald's Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such McDonald's Cards; (vi) advertising and promoting such McDonald's Card programs; and/or (vii) enabling McDonald's customers to make purchases using such cards at retail stores owned or controlled by the McDonald's Defendants; all with specific intent to cause and/or encourage such direct infringement of the '787 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '787 patent.

106.    On information and belief, at least Defendant McDonald's was provided with notice of the '787 patent but the McDonald's Defendants have continued their infringement notwithstanding such notice.

107.    The McDonald's Defendants' direct infringement, contributory infringement and/or inducement to infringe the '787 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

108.    Unless enjoined by the Court, the McDonald's Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '787 patent.

109.    The TRU Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '787 patent pursuant to 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell stored value cards and related services, and by making and using systems and methods for conducting associated stored value card authorization transactions which are covered by the '787 patent within the United States and within this District.  The TRU Defendants have been and are engaged in direct infringing activities with regard to at least stored value cards having a unique identification number comprising a BIN that can be redeemed at one or more of TRU stores ("TRU Cards").

110.    The TRU Defendants have made and used and continue to make and use infringing card systems, and have practiced and continue to practice infringing methods by at least one or more of: (i) choosing and authorizing selected retail locations to initiate TRU Card activation and/or recharge transactions that use point-of-sale devices on behalf of the TRU Defendants; (ii) supplying, offering for sale and selling TRU Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (iii) dictating terms and conditions upon TRU customers by which the TRU Defendants retain ownership of funds received from purchases of TRU Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iv) dictating the manner by which TRU Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (v) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card

processing platform on behalf of the TRU Defendants; and/or (vi) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such TRU Cards.

111.    The TRU Defendants have placed infringing card systems into action or service, exercise control over the systems and obtain beneficial use of the infringing systems, and are thus liable for direct infringement under 35 U.S.C. § 271(a) based on making and using systems covered by the '787 patent.  The TRU Defendants are further liable for direct infringement of systems and methods covered by the '787 patent because these Defendants make, use, practice, direct and control the accused card systems and methods, including any components and steps thereof which may be provided by third-parties, such as retailers, intermediate processors and processing platforms, on behalf of, according to the requirements of and subject to the control of the TRU Defendants, such that the TRU Defendants are jointly and severally and/or vicariously liable for the components and acts provided by such third-parties on behalf of the TRU Defendants.

112.    Plaintiff pleads in the alternative that the TRU Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have contributed to and continue to contribute to the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(c) at least by providing, selling and/or offering to sell TRU Cards having a unique identification number comprising a BIN through intermediate processors and third-party retailers as a material component of card systems covered by the '787 patent and for use by intermediate processors in practicing methods and making and using systems covered by the '787 patent, knowing that such cards are

especially made or especially adapted for use in infringing the '787 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

113.    Plaintiff further pleads in the alternative that the TRU Defendants, jointly and severally, and/or through their subsidiaries, affiliates, agents, and/or business partners, have induced and continue to induce the direct infringement of the '787 patent pursuant to 35 U.S.C. § 271(b) at least by one or more of: (i) supplying, offering for sale and selling TRU Cards at such authorized retail locations, which cards have a unique identification number comprising a BIN and must be activated and/or recharged at a point-of-sale device of the retailer; (ii) dictating terms and conditions upon TRU customers by which the TRU Defendants retain ownership of funds received from purchases of TRU Cards, remain liable for the balance of the accounts associated with such cards and the customers are directed how and where to redeem value; (iii) dictating the manner by which the TRU Cards must be activated and informing customers that such cards have no value unless activated at the checkout counter; (iv) directing via contract providers for distribution, transaction processing services, connectivity and integration ("intermediate processors") which enable activation and/or recharge authorization transactions to be initiated at point-of-sale locations and associated with corresponding card accounts hosted on a card processing platform on behalf of the TRU Defendants; (v) directing via contract a card processing platform such that card activation and/or recharge authorization transactions initiated at third-party retailer point-of-sale devices are routed via the selected intermediate processors to and from the selected processing platform, with such processing platform providing processing of card authorization transactions and management of accounts associated with such TRU Cards; (vi) advertising and promoting such TRU Card programs; and/or (vii) enabling TRU customers to make purchases using such cards at retail stores owned or controlled by the TRU Defendants; all with specific intent to cause and/or encourage such direct

infringement of the '787 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '787 patent.

114.    The TRU Defendants' direct infringement, contributory infringement and/or inducement to infringe the '787 patent has injured Alexsam, and Alexsam is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

115.    Unless enjoined by the Court, the TRU Defendants will continue to injure Alexsam by directly infringing, contributing to the infringement of and/or inducing the infringement of the '787 patent.

### PRAYER FOR RELIEF

WHEREFORE, Alexsam prays for:

1.    Judgment that the '608 and '787 patents are each valid, enforceable, and infringed by each Defendant;

2    A preliminary and permanent injunction enjoining each Defendant, its officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active concert or participation therewith, from engaging in the aforesaid unlawful acts of patent infringement;

3.    An award of damages arising out of each Defendant's acts of patent infringement, together with pre-judgment and post-judgment interest;

4.    Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

5.    An award of Alexsam's attorneys' fees, costs and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

6.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Alexsam demands trial by jury of all issues triable of right by a jury.

## RESERVATION OF RIGHTS

Alexsam's investigation is ongoing, and certain material information remains in the sole possession of the Defendants or third parties, which will be obtained via discovery herein. Alexsam expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date:   March 17, 2010

*/s/ Melissa Richards Smith*
Melissa Richards Smith
Texas State Bar No. 24001351
Melissa@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX  75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Steven C. Schroer (IL 6250991)
scschr@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY
1942 Broadway
Suite 213
Boulder, CO 80302
Telephone: 303.402.6966
Facsimile: 303.402.6970

Timothy P. Maloney (IL 6216483)
Alison A. Richards (IL 6285669)
Nicole L. Little (IL 6297047)
David A. Gosse (IL 6299892)
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ALEXSAM, INC., a Texas corporation, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | The Honorable _____ |
| | ) | |
| v. | ) | Magistrate Judge _____ |
| | ) | |
| BEST BUY CO., INC., a Minnesota corporation, | ) | **COMPLAINT** |
| BEST BUY STORES LP, a Virginia limited | ) | |
| partnership, BARNES & NOBLE, INC., a | ) | **JURY TRIAL DEMANDED** |
| Delaware corporation, BARNES & NOBLE | ) | |
| MARKETING SERVICES CORP., a Florida | ) | |
| corporation, THE GAP, INC., a Delaware | ) | |
| corporation, DIRECT CONSUMER SERVICES, | ) | |
| LLC, a California limited liability company, | ) | |
| THE HOME DEPOT, INC., a Delaware | ) | |
| corporation, HOME DEPOT INCENTIVES, INC., a | ) | |
| Virginia corporation, MCDONALD'S | ) | |
| CORPORATION, a Delaware corporation, P2W, | ) | |
| INC. NFP, an Illinois corporation, TOYS "R" | ) | |
| US, INC., a Delaware corporation, and TRU- | ) | |
| SVC, LLC, a Virginia limited liability | ) | |
| company, | ) | |
| | ) | |
| Defendants. | ) | |

## INDEX OF EXHIBITS

| DESCRIPTION: | EXHIBIT NO. |
|---|---|
| U.S. Patent No. 6,000,608 | A |
| U.S. Patent No. 6,189,787 | B |